

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
────────────────────────────────
ROBERT KRONENBERG,

                Plaintiff(s),

-against-

ALLSTATE INSURANCE COMPANY and
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

                Defendant(s).
────────────────────────────────

MEMORANDUM & ORDER
18-CV-6899 (NGG) (JO)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Robert Kronenberg brings this putative class action against Allstate Insurance Company and its subsidiary Allstate Fire and Casualty Insurance Company (collectively "Allstate" or "Defendants"). (*See* Compl. (Dkt. 1).) Plaintiff alleges that Allstate violated New York law by systematically undervaluing vehicles that are totaled in accidents. Plaintiff claims that, as a result, Allstate underpaid Plaintiff when his vehicle was totaled in a collision with a driver who was insured by Allstate. (*See id.*) Allstate moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), and strike Plaintiff's class allegations under Rule 12(f). (Defs. Mot. to Dismiss (Dkt. 22); Defs. Mot. to Strike (Dkt. 28).)

For the following reasons, Allstate's motion to dismiss is GRANTED with respect to Plaintiff's declaratory and injunctive relief claim and DENIED with respect to Plaintiff's GBL § 349 and unjust enrichment claims. Allstate's motion to strike class allegations is DENIED without prejudice and with leave to renew.

1

I. BACKGROUND

A. Facts

The following facts are drawn from Plaintiff's complaint and are assumed to be true for purposes of Allstate's motions. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

On or about February 23, 2018, Plaintiff was operating a motor vehicle in New York when he was hit by an insured of Allstate. (Compl. ¶¶ 12, 15, 41.) The extent of the damage to Plaintiff's vehicle was severe enough that Allstate deemed it a total loss. (*Id.* ¶ 40.) On or about February 24, 2018, Allstate sent Plaintiff a coverage letter acknowledging its potential liability for Plaintiff's loss. (*Id.* ¶ 41.) On or about March 19, 2018, Allstate sent Plaintiff a letter confirming that it was accepting 100% liability for the accident. (*Id.*)

Allstate paid Plaintiff $3,150.07 as compensation for the loss of his vehicle. (*Id.* ¶ 43.) Allstate based its valuation of Plaintiff's vehicle on a report produced by CCC Information Systems, Inc. ("CCC"), a third-party vendor of casualty-claim appraisals, approved by the New York State Department of Financial Services. (*Id.* ¶¶ 30, 31, 43.) Plaintiff alleges that Allstate instructed CCC as to what data to include in its report, which included values from three different comparable vehicles to produce a "statistically valid fair market value" for a "substantially similar vehicle." (*Id.* ¶¶ 27, 30-31, 43.) However, one of the three vehicles used in the CCC report was a private market vehicle valued at $2,200 without a listed Vehicle Identification Number or information about the vehicle's condition. (*Id.* ¶¶ 34, 36, 38.) Additionally, the report subtracted a uniform condition adjustment of $610 from each of the two dealer vehicles, valued at $2,995 and $4,595, without itemizing or indicating the basis of the adjustment. (*Id.* ¶¶ 38, 43.) These practices, according to Plaintiff, reduce the value of loss vehicles to the benefit of Allstate. (*Id.* ¶¶ 39, 43.)

Allstate represents on its website and in its standard form automobile policy that it will issue payment for the "actual cash value" of the vehicle in the event of a total loss. (*Id.* ¶¶ 18-20.) However, because Allstate's valuation method undervalued Plaintiff's vehicle, Plaintiff did not receive the actual cash value of his car. (*Id.* ¶¶ 29, 33.) Additionally, because Allstate's practice is to instruct CCC to include non-comparable private market vehicles and to make uniform condition adjustment deductions, the reports generated by CCC consistently produce artificially low valuations. (*Id.* ¶¶ 30, 33-34, 43.) These methods of undervaluation are widespread practices of Allstate which materially mislead consumers, including Plaintiff and other members of the putative class. (*Id.* ¶¶ 31, 33, 44.) Through the consistent undervaluation of vehicles, Allstate has retained substantial sums of money, increasing its profit while consumers such as Plaintiff have gone undercompensated. (*Id.* ¶ 63.)

### B. Procedural History

Plaintiff filed his complaint on December 4, 2018, asserting three causes of action against Defendants: 1) violation of N.Y. Gen. Bus. Law ("GBL") § 349; 2) unjust enrichment; and 3) declaratory and injunctive relief. (*Id.* ¶¶ 73-88.)

On June 7, 2019, Defendants filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and a motion to strike class allegations under Fed. R. Civ. P. 12(f). (See Mot. to Dismiss (Dkt. 22); Def. Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 23); Mot. to Strike (Dkt. 28); Mem. in Supp. of Mot. to Strike (Dkt. 29).) Plaintiff opposes both motions. (Mem. in Opp. to Mot. to Dismiss (Dkt. 25); Mem. in Opp. to Mot. to Strike (Dkt. 30).)

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The assessment of whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In reviewing a complaint, the court must accept as true all allegations of fact, and draw all reasonable inferences from these allegations in favor of the plaintiff. *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Additionally, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

### B. Discussion

#### 1. Claim Under GBL §349

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). In order to successfully assert a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented

conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)). An action under GBL § 349 is not subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), "but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 128 (E.D.N.Y. 2011) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)). Defendants argue that Plaintiff fails to meet each of the elements of a GBL § 349 claim.[1] (*See* Mem. at 10-12.)

### a. Consumer Oriented Practices

Consumer oriented conduct consists of "acts or practices [that] have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). Because GBL § 349 "was intended to afford a practical means of halting consumer frauds at their incipiency," it does not require a repetition or pattern of deceptive behavior. *Id.* (citation and quotation marks omitted). Plaintiffs may satisfy the consumer-oriented conduct requirement by showing that the conduct at issue "potentially affects similarly situated consumers." *Wilson v. Nw. Mut. Ins. Co.*, 625

---

[1] Defendants also contest Plaintiff's standing, arguing that Plaintiff does not satisfy New York Insurance Law § 3240(b)(1), which requires a party lacking privity of contract with an insurer to first obtain a judgment against the insured before bringing a contract claim against the insurer. However, Plaintiff has not brought a contract claim against Defendants and § 3240(b)(1) is not applicable. *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 557 (S.D.N.Y. 2016) (dismissing third-party beneficiary claims when they lacked privity, but finding that a claim under GBL § 349 passed muster).

F.3d 54, 64 (2d Cir. 2010) (alteration adopted) (quoting *Oswego Laborers'*, 647 N.E.2d at 745).

The complaint alleges that the CCC report Defendants used to appraise Plaintiff's vehicle set an artificially low value for his car and that this method of undervaluing vehicles is a widespread practice of Defendants when settling claims with other consumers.[2] (Compl. ¶¶ 30-34, 36, 43-44.) Although "[s]ingle shot transaction[s]" or "[p]rivate contract disputes, unique to the parties" are not governed by GBL § 349, *Oswego Laborers'*, 647 N.E.2d at 744, Plaintiff has alleged widespread conduct that is likely to impact similarly situated consumers. (Compl. ¶¶ 19-20, 30, 34, 40); *see also Williamson v. Stryker Corp.*, No. 12-CV-7083(CM), 2013 WL 3833081, at *14 (S.D.N.Y. July 23, 2013) (noting that "representations on a website were clearly consumer-oriented, as they were directed and available to the public at large"). Accordingly, the complaint adequately alleges consumer-oriented conduct by the Defendants.

### b. Materially Misleading

The standard for whether an act or practice is materially misleading is objective; it "require[es] a showing that a reasonable consumer would have been misled by the defendant's conduct." *Ackerman v. Coca-Cola Co.*, No. 09-CV-0395 (JG), 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010) (citing *Marcus v. AT&T*, 138 F.3d 46, 64 (2d Cir. 1998)); *see also Oswego Laborers'*, 85 N.E.2d at 745 (adopting an objective test). GBL § 349 does not require a deceptive practice to "reach the level of common law fraud to be actionable," nor does it require proof of reliance. *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000). Additionally, "[n]owhere does GBL § 349 provide an exception for

---

[2] Plaintiff also notes that this practice has resulted in similar litigation in other jurisdictions. (Compl. ¶ 44; *see also Olberg v. Allstate Ins. Co.*, No. C18-0573-JCC (W.D. Wash.).)

insurance companies, nor does the Insurance Law exempt insurance companies from the reach of GBL § 349." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52 (2d Cir. 1992). Finally, "[c]ourts have generally held that since the materially misleading conduct factor requires a reasonableness analysis best suited for a jury, it cannot be resolved on a motion to dismiss." *Carrillo v. Wells Fargo Bank, N.A.*, No. 18-CV-3095 (SJF) (SIL), 2019 WL 3714801, at *7 (E.D.N.Y. May 10, 2019), *report and recommendation adopted*, 2019 WL 3927369 (E.D.N.Y. Aug. 20, 2019) (citation and quotation marks omitted) (alterations adopted); *see also Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (collecting cases).

Here, Plaintiff alleges sufficient facts to support a claim that Allstate's practices would mislead a reasonable consumer. Plaintiff alleges that Allstate's website promises "actual cash value" for a vehicle which is totaled in an accident. (Compl. ¶¶ 19-20.) Additionally, the insurance policy underlying Plaintiff's claim, which is incorporated into the complaint by reference, includes "actual cash value" coverage for auto collisions. (Compl. ¶13; Auto Policy Declarations (Dkt. 24 at ECF p. 45).) The complaint also includes reference to 11 NYCRR § 216.6's requirement that insurers pay claimants amounts that are "fair and reasonable" and stating that "actual cash value" is the best measure of value. (Compl. ¶ 21.) Accepting Plaintiff's allegations as true, a reasonable consumer expecting actual cash value for a totaled vehicle would be misled by Defendants' valuation method, which, relying on at least one non-comparable market vehicle as well as an unexplained condition adjustment, produces an artificially low value for the vehicle. (*Id.* ¶¶ 38, 39, 43.)

Defendants contend that a fully disclosed practice cannot be deceptive, and that Allstate informed Plaintiff of the valuation method used to pay Plaintiff's claim. (Mem. at 12-13 (citing *Stutman*, 731 N.E.2d at 613).) However, where, as here, the essence

7

of a plaintiff's claim is that the "[i]nsurer *did not do* what its policy said it would do and that the rates [or values] listed . . . do not represent the prevailing competitive[] rates as they purported to do," an insurer cannot overcome a claim of deception by disclosing estimates stating the rates to be paid. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 125 (2d Cir. 2017) (emphasis in original). While Plaintiff was aware of the condition adjustment deductions applied to comparable vehicles in the CCC report, he received conflicting and unsatisfactory explanations for the deductions and alleges they were part of a deceptive practice to lower the value of Plaintiff's claim. (Compl. ¶¶ 46-48.)

Defendants also argue that Plaintiff is unable to predicate a GBL § 349 claim on an alleged violation of New York Insurance Law § 2601 or its implementing regulation 11 NYC RR § 216.7 as neither supports a private right of action. (Mem. at 8.) However, this argument misconstrues Plaintiff's complaint, which alleges deceptive conduct in the course of a settlement transaction arising from a third-party claim Plaintiff asserted against Allstate. (Compl. ¶¶ 40-44.) Plaintiff's cause of action under GBL § 349 describes Defendants' deceptive conduct generally, and asserts that such "described conduct, *including* its violations of N.Y. Insurance Law" is inherently deceptive and in violation of GBL § 349. (*Id.* ¶¶ 73-80 (emphasis added).) While a violation of another statute by conduct that is not inherently deceptive cannot serve as the basis for a GBL § 349 claim, "a GBL claim is viable where the plaintiff 'make[s] a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim' under another statute that is not independently actionable." *Nick's Garage*, 875 F.3d at 127 (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200 (2d Cir. 2005)). Plaintiff's allegations that Defendant's valuation methods are inconsistent with New York insurance regulations add color to the underlying complaint but are not required to allege Allstate's deceptive conduct. *See id.* (noting that plausible evidence of an insurer engaging in

8

deceptive conduct relating to labor rates supported a GBL § 349 claim regardless of additional insurance law violations). Therefore, Plaintiff satisfies the second prong of his GBL § 349 claim.

### c. Injury

"[M]onetary loss is a sufficient injury to satisfy the requirement under § 349," when that loss is independent of a loss caused by a breach of contract.[3] *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Because Plaintiff asserts a loss caused by a deceptive act itself and not a loss caused by breach of contract, Plaintiff's alleged monetary loss is sufficient for a GBL § 349 claim. Plaintiff claims that the $610 condition adjustment deduction and the inclusion of a non-comparable private market vehicle worked to depress the value of Plaintiff's vehicle. (Compl. ¶¶ 38, 43.) These allegations, taken as true, adequately assert a monetary loss. *Id.* at 42; *see Nick's Garage*, 875 F.3d at 125 (noting that "an [i]nsurer's alleged failure to pay sufficient sums, if proved, constitutes a sufficient injury under GBL § 349").

Because Plaintiff has adequately plead all three prongs of his GBL § 349 claim, Defendants' motion to dismiss Plaintiff's GBL § 349 claim is DENIED.

### 2. Unjust Enrichment Claim

"[A]n unjust enrichment claim in New York require[s] proof that (1) [D]efendant was enriched, (2) at [P]laintiff's expense, and (3) equity and good conscience militate against permitting [D]efendant to retain what [P]laintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d

---

[3] A least one court in this district has held that *Nick's Garage* eliminated the requirement that the monetary loss for the GBL § 349 claim be independent of a loss the breach of contract. *See Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 224 (E.D.N.Y. 2018). Because Plaintiff alleges a monetary loss that is independent of a loss from a breach of contract, the court does not determine whether this independence is still a requirement.

Cir. 2004); *see also Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012). "Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (N.Y. 2011).

Plaintiff adequately pleads the elements of an unjust enrichment claim. First, Plaintiff alleges deceptive or misleading conduct in the course of a third-party settlement with Defendants whereby Plaintiff was underpaid. (Compl. ¶¶ 60-63.) Second, for the purposes of the unjust enrichment claim, any money not remitted to Plaintiff is assumed to be retained by Defendants, improving their bottom line. Third, "[u]nder New York law, it is contrary to equity and good conscience to enable a party to benefit from misleading representations." *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010) (citation and quotation marks omitted). Finally, Plaintiff's relationship with Defendants was not too attenuated. Plaintiff directly filed his third-party claim with Defendants, which resulted in the purported underpayment at the heart of this controversy. (Compl. ¶¶ 41-42.) Therefore, Defendants' motion to dismiss Plaintiff's claim for unjust enrichment is DENIED.

### 3. Claim for Declaratory and Injunctive Relief

"[I]njunctive relief is a remedy, and not a cause of action." *Samele v. Zucker*, 324 F. Supp. 3d 313, 332-33 (E.D.N.Y. 2018); *see also KM Enters., Inc. v. McDonald*, No. 11-CV-5098 (ADS), 2012 WL 4472010, at 20 (E.D.N.Y. Sept. 25, 2012) ("[A] request for injunctive relief is not a separate cause of action." (citations and quotation marks omitted)), *aff'd*, 518 F. App'x 12 (2d Cir. 2013). Plaintiff may be entitled to either a declaratory judgment or an injunction to remediate a violation of GBL § 349, but that remedy will depend on the outcome of his claim; if his claim entitles him to relief he can apply for the remedy once liability has been established. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407-

08 (S.D.N.Y. 2010). Also, while district courts have broad discretion to exercise declaratory jurisdiction, the determination Plaintiff seeks will be adjudicated in his GBL § 349 claim so a declaratory judgment will serve no useful purpose. *See Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). Accordingly, Defendants' motion to dismiss Plaintiff's claim for declaratory and injunctive relief is GRANTED, but these remedies are deemed added to the *ad damnum* clause in Plaintiff's prayer for relief.

### 4. Claims Against Defendant Allstate Insurance Company

Defendants also argue that Plaintiff fails to allege a claim against Allstate Insurance Company in addition to the claim against Allstate Fire and Casualty Insurance Company. (Mem. at 15.) However, Plaintiff refers to both Allstate Insurance Company and Allstate Fire and Casualty Insurance Company collectively as "Allstate" throughout the entire complaint. (Compl. ¶ 1.) As a result, any allegation levied against "Allstate" is an allegation levied against both Allstate Insurance Company, and Allstate Fire and Casualty Insurance Company. (*Id.*) Defendants do not contest this court's jurisdiction over Allstate Insurance Company or make any additional arguments other than to say that Allstate Insurance Company "had no involvement" in Plaintiff's claim. (Mem. at 16.)

However, Plaintiff alleges that Allstate Fire and Casualty Insurance Company is a subsidiary of Allstate Insurance Company, and the policy of the insured includes references to both "Allstate Fire and Casualty Insurance Company," and "Allstate." (Compl. ¶¶ 13, 15; Auto Policy Declarations at ECF p. 39.) Documentation from Plaintiff's correspondence with Allstate, incorporated into the complaint by reference, includes an email from an "Allstate Insurance Company" representative. (Compl. ¶ 41; Email from Allstate Ins. Co. to Plaintiff (Dkt. 26 at ECF p. 45).) Because

Plaintiff's allegations are made against both Defendants, the court declines to dismiss Allstate Insurance Company from the case.

### III. MOTION TO STRIKE CLASS ALLEGATIONS

Defendants separately move to strike the class allegations contained in the complaint pursuant to Federal Rule of Civil Procedure 12(f). (Def. Mot. to Strike.) Defendants argue that Plaintiff's complaint fails to allege a class that satisfies the commonality, predominance, and superiority requirements of Fed. R. Civ. P. 23. (Def. Mem. in Support of Mot. to Strike at 9-13.)

#### A. Legal Standard

"Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 357 (E.D.N.Y. 2008) (citation and quotation marks omitted). "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (citation and quotation marks omitted). "Accordingly, district courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012); *see also, e.g., Chenensky v. N.Y. Life Ins. Co.*, No. 07-CV-11504 (WHP), 2011 WL 1795305, at *4 (S.D.N.Y. Apr. 27, 2011); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404-

05 (W.D.N.Y. 2010); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 324 (S.D.N.Y. 2010).

### B. Discussion

Here, Defendants move to strike Plaintiff's class allegations before any discovery has taken place to assess the merits of the complaint. Plaintiff's complaint alleges that a common valuation method used by a state approved vendor was manipulated by Defendants to impact similarly situated consumers. (Compl. ¶¶ 30-31, 34, 44.) Defendants, therefore, cannot "demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015). Defendants' motion to strike class allegations is therefore DENIED without prejudice and with leave to renew at the appropriate time.

## IV. CONCLUSION

For the forgoing reasons, Defendants' motion to dismiss (Dkt. 22) is GRANTED with respect to Plaintiff's claim for declaratory and injunctive relief and DENIED with respect to Plaintiff's GBL § 349 and unjust enrichment claims. Defendants' motion to strike class allegations (Dkt. 29) is DENIED without prejudice. The parties are DIRECTED to contact the chambers of Magistrate Judge James Orenstein regarding next steps in the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
March 12, 2020

NICHOLAS G. GARAUFIS  
United States District Judge